UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

GENERALI US-BRANCH,                  )
                                     )
        Plaintiff,                   )
                                     )
        vs.                          )        CV 00-BU-2050-M
                                     )
SOUTHERN   CAL   TRANSPORT,          )
INC.,                                )
                                     )
        Defendant.                   )

**ENTERED**

MAR 2 1 2001

===========================================================

## MEMORANDUM OPINION

===========================================================

This case is presently pending before the Court on motion for summary judgment filed by Plaintiff. Doc. 12. Based on the Court's review of the parties' submission, Plaintiff's motion for summary judgment is due to be granted.

Plaintiff Generali US-Branch filed this declaratory judgment action, asking the Court to declare that it had no liability to Defendant Southern Cal Transport, under the terms of a general liability insurance policy. Plaintiff contends that the insurance policy does not provide coverage for the claims asserted against Defendant by Ethel Sowers and that Defendant settled the Sowers case without Plaintiff's permission in violation of the terms of the policy.

Defendant filed a counterclaim, claiming that Plaintiff is liable for breach of contract because it did not enter a timely appearance, defend, and/or indemnify Defendant for the claims of Sowers-- either in her original or amended complaint. Defendant also claims that Plaintiff acted in bad faith in failing to investigate, refusing to defend, and refusing to pay.

Plaintiff asks this Court to enter a judgment in its favor on its declaratory judgment complaint and Defendant's counterclaim.

## I.   SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material

fact. *Celotex*, 477 U.S. at 323; 106 S. Ct. at 2553;  *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial."  *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994).  In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor.  *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II.   STATEMENT OF FACTS

Plaintiff issued a commercial general liability policy to Defendant and that policy was in effect at the time of the allegations made the basis of the claims of Sowers.

Defendant, a trucking company, requires its drivers to work in two-member teams.  In 1997, Defendant hired Sowers and she was teamed with Kenneth Eller. Sowers and Eller had been introduced by a mutual acquaintance in the Gadsden area.  During their first trip together in June 1997, Eller attacked Sowers.

Approximately two years later, on June 4, 1999, Sowers filed a complaint against Defendant, based on the attack, which contained the following causes of action:  (1) breach of an employment agreement;  (2) fraud, negligence, or

wantonness related to the alleged employment agreement; (3) negligent or wanton pushing or shoving by Eller while he was acting within the line and scope of his authority as Defendant's agent; and (4) assault and battery.

Defendant's president, Ken Adams, faxed the complaint to Mark Hoffman, an attorney for Defendant, on June 22, 1999. The same day, he faxed the complaint to Hank Strother at Palomar Insurance Corporation, Defendant's insurance agent, who in turn forwarded notice of the claim to Anchor General Managing Agency ("Anchor"), the general managing agent for Plaintiff, the same day. About a week later, Anchor informed Defendant that the claims of Sowers were not covered by its general liability policy, citing certain policy exclusions. Anchor urged Defendant to retain counsel and defend the case at its own expense. Defendant retained Hoffman to represent it with regard to the Sowers case.

In July 1999, Toni Vaughn, an adjuster with Evers & Associates, Inc., asked Hoffman to obtain copies of the personnel files of Sowers and Eller. On August 12, 1999, Hoffman wrote to Vaughn and provided an address for the Texas court where Eller's criminal trial took place and told her that he had the personnel files of Sowers and Eller. About a month later, Vaughn wrote to Hoffman and asked him to forward copies of the personnel files of Sowers and Eller and a bill for the cost of photocopying. She also told Hoffman that she had requested a copy of the transcript of Eller's criminal trial. Two months later, Hoffman, who had not sent the personnel

files to Vaughn, wrote Vaughn and asked her to come to his office to view the personnel files.

In December 1999, Attorney Ben Hogan informed Hoffman, Defendant's attorney in the Sowers matter, that he was representing Sowers. During this conversation, Hogan also told Hoffman that he was going to amend the complaint to include claims of negligent hiring and training. The following month, Adams, Defendant's president, began discussion regarding Defendant's potential sale.

In January 2000, Adams commenced discussions with Ed Finch of FHL Capital. Finch and Adams discussed a potential purchase of Defendant by The Transit Group ("Transit Group"), a Georgia company that had purchased another trucking company with which Finch had been associated. Representatives of Transit Group and Defendant tentatively agreed to the basic terms and conditions upon which Transit Group would purchase Defendant. In February 2000, Transit Group conducted a due diligence review of Defendant.

During the due diligence review, Hoffman informed representatives of Transit Group of the Sowers litigation. Approximately five to seven days following completion of the due diligence review, Hoffman discussed the details of the Sowers litigation with an attorney representing Transit Group. At some point, Hoffman was told that Transit Group would not buy into an unknown liability and it would require

a personal indemnification from Adams for liability in the Sowers litigation prior to consummation of any transaction. Hoffman informed Adams of this requirement.

On January 14, 2000, Vaughn wrote to Hoffman and informed him that she had a copy of the transcript of Eller's criminal trial. Between January 14 and March 6, 2000, Vaughn was able to meet with Hoffman and advised him that she wanted to take the statements of Mr. Norsworthy and Ms. Fountain, two of Defendant's employees who had testified at Eller's criminal trial.

On March 6, 2000, Vaughn repeated her request to conduct these interviews. At about the same time that Vaughn made this request, Hoffman offered to settle Sowers' claims for $100,000.00.

During this same period, Hoffman and Hogan, Sowers's attorney, began informal discussions regarding settlement of the Sowers case. On March 9, 2000, Hoffman confirmed in writing a verbal offer to Hogan to settle the Sowers litigation for $100,000.00. On March 21, 2000, Hogan made a counter-offer of $250,000.00.

On March 21 or 22, 2000, Phil Belyeu of Transit Group informed Adams that Transit Group was not going to go forward with the acquisition of Defendant. Belyeu told Adams that this action had nothing to do with Defendant or with Transit Group's interest in Defendant, but was based on Transit Group's internal business conditions. After this conversation, Adams continued to believe that he might nevertheless accomplish a deal with Transit Group.

After Hoffman received the March 21 letter from Hogan rejecting his offer, he and Hogan had several telephone conversations and ultimately agreed to settle Sowers's claims for $120,000.00. On April 5, 2000, Hogan faxed a draft of an amended complaint he intended to file in the Sowers case to Hoffman. On the cover sheet, Hogan stated: "Please look over this draft amendment and give me a telephone call." Doc. 12, Exh. 10. When asked if he knew why Hogan had faxed him a draft of the amended complaint before filing it, Hoffman testified, "I guess he wanted my opinion as to whether or not I thought it was going to trigger some insurance coverage." Doc. 12, Exh 4, p. 57.

Hogan filed the amended complaint on April 5, 2000, the same day he had faxed a copy to Hoffman. This amended complaint replaced the complaint in its entirety. Several days later, Defendant and Sowers agreed to settle her case. Hoffman testified that he told Plaintiff that Sowers may amend her complaint to add a negligent hiring and training claims perhaps as early as December 1999. However, Hoffman testified that Sowers had accepted Defendant's offer to settle the case two or three days before he sent a letter to Anchor informing it that Sowers had filed an amended complaint, containing allegations of negligent hiring and training, on April 5, 2000.

On April 10, 2000, five days after Hogan had faxed the amended complaint to Hoffman and had filed it, Hoffman wrote to Anchor and informed them of the filing

of the amended complaint. Hoffman told Anchor that Defendant had agreed to settle

this case for $120,000.00. He also told Anchor that the settlement was motivated

in part by the fact that the Sowers case was "effectively hindering certain business

strategies and decisions" and stated that "this suit must be resolved immediately."

Doc. 12, Exh. 2. He also stated that claims asserted in the amended complaint --

that asserted only claims directly against Defendant -- were within the coverage of

the policy. This letter states in part:

> Enclosed is a copy of Plaintiff's amendment to her complaint
> which has just been filed. As you can see, the Plaintiff has dropped her
> original averments and now alleges two counts directly against
> Southern Cal Transport, Inc., only.
>
> . . .
>
> Demand is hereby made on your principal, Generali Insurance
> Company, to assume full coverage for these new allegations against
> Southern Cal Transport, Inc.
>
> Last June you advised the insurance company would be
> assigning an adjuster to take statements and otherwise investigate the
> underlying facts made the basis of this lawsuit. You should have
> learned this is a very serious matter which resulted in criminal charges
> being brought against Mr. Ellers [sic], resulting in his conviction. . . .
> Obviously, such conduct was not within the line and scope of his
> authority and duties with Southern Cal Transport. Nevertheless, these
> new allegations are brought directly against Souther cal for its
> negligence and/or wantonness in failing to adequately hire, train, and
> supervise Mr. Ellers [sic], which resulted in physical and emotional
> injuries to Plaintiff.
>
> The exclusions upon which your company originally denied
> coverage are not applicable to these claims. . . .

. . .

This case causes my client great concern, both from a liability standpoint, and because of it is effectively hindering certain business strategies and decisions.   Therefore, this suit must be resolved immediately.

Because of the very egregious nature of this suit and the underlying claims, my client has agreed to settle this case for the sum of $120,000.00.   It is a necessity that this matter be resolved immediately.   One of the main reasons we have agreed to this settlement is the filing of this new amendment which alleges very serious allegations against my client.   These allegations are clearly covered under my client's general liability policy with Generali.  Your client has denied coverage to my client for the claims asserted in the original lawsuit and has dragged its feet in investigating this matter to determine the true facts and whether or not coverage should be extended.   Such actions were clearly adverse to my client and represent bad faith conduct on behalf of both your firm and our insurance company.  There is absolutely no excuse for doing nothing on this claim for almost ten months.

Please be advised that unless our insurance company steps in and resolves this matter immediately, obtaining a full release of my client from any and all liability for these claims, we intend to consummate a settlement with the Plaintiff as outlined above and will then file suit against both your firm and Generali for not only breach of contract but bad faith in failing to investigate this matter and refusing to protect our interest in view of the allegations of this new complaint.

We have agreed with the attorney for the Plaintiff to resolve this matter in ten (10) days.  If we have not heard from you, and Generali has not stepped in to assist us in resolving this dispute within that time frame, we will consummate the settlement and file suit against you.

*Id.*

Several days later, Hoffman received a telephone call from an attorney for Generali.  Hoffman testified that they spoke only once.  On April 20, 2000, one of Hogan's employees e-mailed Hoffman with instructions regarding wiring the $120,000.00 payment to the firm's trust account.  On May 1, 2000, Hogan mailed a release signed by Sowers and a motion to dismiss with prejudice to Hoffman.

Defendant admits that "some time after the filing of Ms. Sowers' Amendment to Complaint and settlement of Ms. Sowers' claim that the Defendant was advised [Generali] would provide a defense to  Southern Cal.  The exact date of that representation is unknown."  Doc. 12, Exh. 16, ¶ 18; Exh. 17, ¶ 18.

The policy contains the following provision:  "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent."  Doc. 12, Exh. 1, Exh. B section IV(2)(d).

## III.   DISCUSSION

Based on the Court's review of the parties submissions, Plaintiff's motion for summary judgment is due to be granted.

### A.   DEFENDANT SETTLED THE CASE WITHOUT PLAINTIFF'S CONSENT

The record is clear that Defendant agreed to settle the Sowers case for $120,000.00, without Plaintiff's consent and before Plaintiff had received the

amended complaint. The Court finds that this settlement constitutes an assumption

of an obligation and, without Plaintiff's consent, is a clear breach of the unambiguous

terms of the policy. Therefore, the Court finds that Plaintiff is not liable to Defendant

for the payment of the settlement amount agreed to by Defendant without Plaintiff's

consent. *General Agents Ins. Co. of America, Inc. v. Compton*, 921 F. Supp. 716,

723 (N.D. Ala. 1996); *Reeves v. State Farm Fire and Casualty Co.*, 539 So.2d 252,

256 (Ala.1989) *see also Correll v. Fireman's Fund Ins. Companies*, 529 So.2d 1006,

1008-09 (Ala. 1988)


### B.    COUNTERCLAIMS OF BREACH OF CONTRACT AND BAD FAITH

The Court finds  no disputed issue of material fact with regard to Defendant's

counterclaims of breach of contract and bad faith, and that Plaintiff is entitled to

judgment as a matter of law. *West Beach Development Co., L.L.C. v. Royal Indem.

Co.*, Civil Action No. 99-0782-P-S, 2000 WL 1367994, *4-*7 (S.D. Ala. Sept. 19,

2000); *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 318 (Ala. 1999); *Weaver

v. Allstate Ins. Co.*, 574 So.2d 771, 773-74 (Ala. 1990); *Poarch v. Alfa Mut. Ins. Co.*,

No. 2980900, (NO. 2980900), 2000 WL 127167, *3-*4 (Ala. Civ. App. Feb. 4, 2000).

The unambiguous language of the policy excluded coverage of the claims of Sowers

in the original complaint, and Defendant was notified of this fact.  Moreover, Plaintiff

did not receive the amended complaint until after the matter had been settled.[1]

Therefore, the Court finds that Plaintiff's motion for summary judgment is due

to be granted as to Defendant's counterclaims.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment is due to be

granted.  The Court finds no existing disputed issue of material fact and that Plaintiff

is entitled to judgment as a matter of law.

---

[1]Defendant's contention that it informed Plaintiff that Sowers might file an amended complaint is not sufficient notice of a "claim" to support a cause of action for bad faith failure to investigate.  There can be no bad faith failure to defend the claims in the amended complaint until the amended complaint was filed. Moreover, because the claims in the amended complaint were settled before Defendant notified Plaintiff that the amended complaint was filed, there can be no bad faith failure to pay.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion granting summary judgment in favor of Plaintiff on its declaratory judgment action and on Defendant's counterclaims.

DONE this _20th_ day of March, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE